UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | C.A. NO.: 4-10-CV-40262-FDS |
| HECTOR E. PINEIRO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| GARY GEMME, WORCESTER CHIEF of POLICE, | ) | |
| And THE CITY OF WORCESTER, a Municipal | ) | |
| Corporation | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO CHIEF GARY GEMME AND THE CITY OF WORCESTER MOTION TO DISMISS OR TO STAY THIS PROCEEDING ON ABSTENTION GROUNDS**

Now comes the plaintiff, Hector E. Pineiro, and he respectfully requests this Honorable

Court deny defendants' Motion to stay or dismiss this action on abstention grounds because the

facts of this case in no way bring it within the narrow scope of exception to mandatory

jurisdiction under abstention doctrine.  In further support of his opposition plaintiff states as

follows:

## Facts

On December 31, 2010, plaintiff filed his complaint in this action seeking a declaration

that defendants' issuance to him of a Class A license to carry a firearm in Massachusetts with

certain restrictions violates his rights under the Second and Fourteenth Amendments. Plaintiff

seeks injunctive and compensatory relief under the federal Civil Rights Act. 42 U.S.C. § 1983.

On August 17, 2010, plaintiff applied with the City of Worcester for a Massachusetts Class A

license to carry a firearm for all lawful purposes ("LTC") pursuant to G.L. c. 140, § 131.

Complaint at ¶ 45.   The complaint alleges that plaintiff had taken all the firearms training programs required in Massachusetts for an LTC. *Id.*, ¶ 42, 43. In August 2010, plaintiff took an additional course to carry concealed weapons.  *Id.*, ¶ 46. On September 24, 2010, Defendants issued the plaintiff a license nominally resembling an LTC, but with strict limitations precluding carrying of a concealed handgun for self-defense.  Under explicit restrictions incorporated in the license, plaintiff obtained only the right to transport a weapon to and from shooting ranges and to use a weapon for hunting.  *Id.*, ¶ 47, 48.

The complaint states that plaintiff met all the requirements under Massachusetts law for an unrestricted LTC because he is not a member of any class of persons statutorily excluded from eligibility for an LTC, e.g.: he is not an alien; he has never suffered from mental illness; he was over the age of 21 on the date of application, and; he has never been convicted of a crime. *Id.*, ¶ 50.  The complaint further alleges that plaintiff's license application demonstrated a sound basis for his belief that he has "good reason to fear injury to his person or property."  *Id.*, ¶¶ 14-41, 62.  The complaint asserts that the Second Amendment right to keep and bear arms is good against states and municipalities and that the only remedy available to the plaintiff under the state law "denies him the right and ability, both substantively and procedurally, to vindicate his Second Amendment right to bear arms for self defense." *Id.* ¶ 58.   The complaint states  that M.G.L. c. 140 § 131, by its plain language, provides only for review of the reasonableness of a municipality's determination that a given person is not "suitable" for an LTC, and does not provide for scrutiny of municipal policy or conduct regulating a constitutional right.  The state law allows but does not mandate nullification of unreasonable or unconstitutional denial or restriction of an LTC, it does not allow plaintiff the necessary scope of discovery to meet the burden of demonstrating infringement on a Constitutional right, and it does not allow for trial by

jury *Id.* ¶ ¶ 58, 60.  The complaint further alleges that under color of lawChief Gemme claims authority to deny, suspend, restrict or revoke a citizens' rights to carry concealed firearms for self defense based on selectively applied criteria and even based on no criteria at all.  *Id.* ¶ 61.

Chief Gemme refused to issue plaintiff an LTC under a policy he adopted with the avowed intent of denhying LTCs to citizens generally. *Id.* ¶¶ 64-73.  The complaint alleges that Chief Gemme effectively denied plaintiff an LTC in part because, as an attorney, plaintiff has brought suit against Gemme on behalf of plaintiff in a number of federal civil rights lawsuits under 42 U.S.C. § 1983.  *Id.* ¶ 108.  The complaint also alleges favoritism, i.e., that Chief Gemme has granted and renewed unrestricted LTCs selectively to individuals with either no cognizable distinctions compared to plaintiff, or because they are public employees or have political connections. In some instances Chief Gemme has disregarded criteria under State Law and under his own policy to allow or continue LTCs for persons found guilty of crimes. *Id*. ¶ 110, 111. Finally, the plaintiff alleges that neither Worcester's firearms policy nor Massachusetts State Law can restrict or condition the exercise of his Second Amendment right to self defense by placing the burden on him to demonstrate "he has good reason to fear injury to his person or property" as the Massachusetts law states.  *Id*. at ¶ 104.[1]

## ARGUMENT

### Introduction

In their opposition Defendants' do not contest the essential allegation that the plaintiff has made in his complaint: that they require qualified applicants who seek LTCs for self-defense to prove a need to exercise their fundamental Second Amendment rights under highly arbitrary

---

[1] The complaint has two counts alleging violations to 42 U.S.C. § 1983, the Second and Fourteenth Amendments.

standards.[2]  Defendants do not dispute either that under the challenged policy qualified applicants are unable to meet the standard set forth by the vague definition that they have established for the term "suitable person." The challenged policy flatly states that LTCs such as that sought by plaintiff, "shall not be granted"  *Id.* ¶ 67.

Defendants' advance two arguments in support of their motion to dismiss or stay which are non-substantive in nature.[3]  First they claim incorrectly that an action by the plaintiff in state court for judicial review of his license restrictions could, if the plaintiff were to prevail, moot this action. Because the plaintiff has a "hearing in the State district Court," . . .if the state court rules in his favor "[t]here will be no issues under the Second Amendment or Equal Protection Clause of the Constitution"  and this action will become "irrelevant." Defendants' Memorandum of Law at 3.

Defendants' second argument, a corollary of the first, is that this Honorable Court should invoke the *Pullman* doctrine to abstain from exercising federal subject matter jurisdiction because resolution of the Constitutional issues raised may be rendered irrelevant by the determination of a predicate state-law question.

Defendants' arguments rest largely on the flawed assumption, which they do not state but strongly imply, that the state and federal actions are essentially parallel.  Defendants aver that the petition for judicial review in state court "involves the same facts and circumstances involved

---

[2] Defendants'  policies also require applicants who seek to exercise their Second Amendment rights to meet a higher standard than state law requires.

[3] Defendants' do not explain why the court has no subject-matter jurisdiction under Fed. R.Civ. P. 12(b)(1) or how this defense applies to this case particularly when they do not contest the essential allegation that the plaintiff has made in his complaint, that he has been denied of Equal Protection and that his rights under the Second and Fourteenth Amendments have been violated.  When a district court considers a Rule 12 (b) (1) motion, it must, however, credit the plaintiff's well-plead factual allegations and draw all inferences in the plaintiff's favor. *Valentin v. Hospital Bella Vista*, 254 F3d 358, 363 (1st Cir. 2001).  The district court may also "consider whatever evidence has been submitted, such as depositions and exhibits submitted." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996) citing *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

in this case: the issuance of a state license to carry a firearm with a restriction not requested by the applicant." Defendants memo at 2.

In acting on the motion the Court should credit the plaintiff's well-plead factual allegations and draw all reasonable inferences in plaintiff's favor. *Valentin v. Hospital Bella Vista*, 254 F3d 358, 363 (1ˢᵗ Cir. 2001).  Because the actions are not parallel and because plaintiff has the right to bring his Constitutional claims before this Court the motion should be denied.

## I.       *PULLMAN* ABSTENTION IS INAPPLICABLE.

It is Black letter law that unless a case falls within certain exceptions, "federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 420 U.S. 800, 817, 96 S.CT. 1236, 47 L.Ed.2d 483 (1976)" quoting *Rio Grande Community Health Center v. Rullan*, 397 F.3d 56, 68 (1ˢᵗ Cir. 2005).  The First Circuit and the Supreme Court have cautioned that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule, "*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976). *Barr v. Galvin*, Civ. 09-2426 (1st Cir. 11-16-2010).

The First Circuit has reiterated the Supreme Court's pronouncement that "[a]mong the case that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute the meaning of which is unclear under state law," *Harris Cnty. Comm'rs Court v. Moore*, 420 US. 77, 84 (1975) *accord*, *Baggett v. Bullitt*, 377 U.S. 360, 377-78 (1964). *Barr v. Galvin*, 09-2426 (1st Cir. 11-16-2010). As the First Circuit has explained in *Barr*, *Pullman* abstention was conceived by the Supreme Court in a case bearing the Pullman name. See *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499-502 (1941). *Pullman* abstention "is warranted where (1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to

resolve a significant federal constitutional question." _Batterman_ v. _Leahy_, 544 F.3d 370, 373 (1st

Cir. 2008); see also _Babbitt_ v. _United Farm Workers Nat. Union,_ 442 U.S. 289, 307-08 (1979)

(noting that abstention may be appropriate in cases where "it is evident that the [state] statute is

reasonably susceptible of constructions that might undercut or modify appellees' vagueness

attack . . . [and] that an authoritative construction of the . . . provision may significantly alter the

constitutional questions requiring resolution"); _Zwickler_ v. _Koota_, 389 U.S. 241, 251 (1967)

(emphasizing that _Pullman_ abstention is appropriate when a state statute, **never** interpreted by a

state court, is "fairly subject to an interpretation which will avoid or modify the federal

constitutional question**").**   _Barr_, involved a challenge from a district court determination that the

plaintiff --a libertarian party candidate for president and vice-president in the 2008 general

elections-- were entitled to have their names in a statewide ballot even though they had not

submitted nomination papers as required by state law. The Secretary of State challenged the

district court determination related to the plaintiff's Equal Protection Claims that the Fourteenth

Amendment gave the right of substitution in the circumstances and the ruling that the state

statute governing substitution of candidates was unconstitutionally vague as applied to the

substitution of non-party candidates.

        The First Circuit concluded that the Equal Protection Clause did not require the

Commonwealth to give a substation mechanism applicable to a non-party candidate, and further

concluded that the statute, while not unconstitutionally vague, was in need of interpretation and

clarification under the _Pullman_ doctrine by the Massachusetts Courts. Id. at 3.

        In _Barr_, there was an "uncertain issue of state law [turn\ing] upon a choice between one

or several alternative meanings of [the] state statute." _Babbitt_, 442 U.S. at 308 (quoting _Baggett_,

377 U.S. at 378). The First Circuit resolved the abstention issue by ruling that "[T]he

Massachusetts courts should therefore be afforded the opportunity to address, in the first instance, the question of the statute's application to non-party presidential and vice-presidential candidates. See, e.g., *Harris Cnty.,* 420 U.S. at 84." *Id. 18.*

The First Circuit ruled that *Pullman* abstention applied, while rejecting the district court interpretation that the statute was void for vagueness, on grounds that the issue of whether the statute applied to presidential or vice-presidential candidates was "ambiguous." The district court also ruled that where the meaning of the statute was unclear, the statute may be found to be unconstitutionally vague. *Id.* at 19.  The First Circuit noted that the mere fact that a statute requires interpretation does not necessarily render it void for vagueness.[4]

The *Pullman* abstention doctrine is discretionary.  *Fideicomiso De La Tierra v. Fortuno*, 604 F. 3d 7, 16 (1st Cir. 2010). *Pullman* abstention avoids unnecessary federal court interference by deferring to state courts on important, unsettled areas of state law; however, it is appropriate only when "substantial uncertainty exists over the meaning of the state law in question, and . . . settling the question of state law will or may well obviate the need to resolve significant federal constitutional question." *Fideicomiso De La Tierra  at 16.* (citations omitted).  The First Circuit has rejected the application of *Pullman* abstention on a number of cases.  *Fideicomiso De La Tierra v. Fortuno*, 604 F. 3d 7, 17 (1st Cir. 2010) (rejecting *Pullman* abstention because the real claim involved a federal constitutional question involving the takings clause); *Batterman v. Leahy*, 544 F. 3d 370, 374-375 (1st Cir. 2008) (in a fee dispute between lawyer and the state on annual cap on reimbursement fees *Pullman* abstention rejected because there was no ambiguity with respect to state law that required clarification); *Rivera-Puig v. Garcia-Rosario*, 983 F.3d

---

[4] The Court ruled that once the state courts clarify the challenged statute (Section 14's relevance), if any, "[t]o the substitution of presidential and vice-presidential candidates, such clarification, however it comes out, would end the "void for vagueness" argument. Thus both of the preconditions for Pullman abstention are satisfied." *Id.* at 19.

311 (1st 1992) (rejecting the application of all four abstention doctrines in a First Amendment case involving a newspaper who requested access to court hearings).[5]

Abstention is impermissible where state law questions are unambiguous because it "would convert abstention from an exception into a general rule." *Rivera-Puig v. Garcia-Rosario*, 983 F.3d 311, 322 (1st 1992) (citations omitted). Moreover, a federal court, should not, as both defendants here, "abstain simply to give a state court the first opportunity to vindicate federal rights." *McNeese v. Board of Education*, 373 U.S. 668, 672, 83 S.Ct. 1433, 1436, 10 L.Ed. 2 622 (1963). *Rivera-Puig*, supra at 321.

Here defendants argue for *Pullman* abstention because plaintiff "[h]as raised a novel question of state law because he is not challenging the denial, revocation or suspension of a state firearms license. Rather, having been issued a license to carry a firearm for all lawful purposes under state law, he is challenging the inclusion of a local restriction. This is an unsettled area of state law."  Defendants' Memo at 3.  That defendants find no reported cases from a Massachusetts District Court (most of which are unreported) discussing the statute in the context of a restriction on the scope of a license does not create a "novel question of law" so as to allow the City of Worcester and Chief Gemme to hide behind the curtain of abstention.  To the contrary, even in the absence of a specific Massachusetts decision on point, the issue of the municipal restriction imposed upon the plaintiff does not make it an "unsettled area of state law" as defendants invite the court conclude.

Because of the broad discretion that the statute bestows upon local licensing authorities in Massachusetts, the state court judge could easily find against Pineiro.  This is because under

---

[5] The court ruled there was no uncertainty surrounding the meaning of Rule 23 court closure provision in preliminary hearings which mandated they be held private at the exclusion (even of the press) because the reporter and the public rights were irreparably harmed in a constitutional sense.  *Id.* at 322.  The Court rejected Pullman abstention noting that "[E]ven after a Pullman stay, *Rivera-Puig* would be back in federal court after the *El Vocero* decision." Id. at 322.

Massachusetts law, the Courts review of a decision by a Chief of Police is narrow in scope and is limited to the question of whether the defendant (chief of police) had reasonable grounds for suspending the plaintiff's license to carry firearms. *Godfrey v. Chief of Police of Wellesle*y, 35 Mass. App. Ct. 42, 45 (1993). Thus, just as in *Rivera-Puig*, even if the Court were to stay the action under a *Pullman* type-stay, Pineiro would be back in federal court after an adverse district court decision. On the other hand a state district court ruling in plaintiff's favor would not remove his Second Amendment rights from the practically unlimited scope of discretion the state statute grants to Chief Gemme as to his determination of "suitability," nor could it provide the remedies and protections available here.

There is simply no unresolved question of state law interpretation here. Its plain meaning, and the pronouncements of Massachusetts courts establish beyond cavil that an LTC "may be revoked or suspended by the licensing authority if it appears that he holder is no longer a suitable person to possess such license. " G.L. c. 140 sec. 131 (f). In determining who can obtain or renew a license to carry a firearm, the licensing authority or a Chief of Police, has "considerable latitude to determine who is a suitable person." *Ruggiero v. Police Commissioner of Boston*, 18 Mass. App. Ct. 256 259 (1984). To be sure, the plaintiff made every effort to convince the City and Gemme that he is suitable to carry a concealed weapon, to no avail. Complaint at ¶ 86-89.

Moreover, despite Defendants' assertions, at a judicial review hearing the full panoply of procedures required in a trial to assure due process is not required in cases of gun license applicants or holders contesting adverse decisions. *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 547 (1983). A challenge under the state law to Chief Gemme's decision regarding a firearms license has the burden to produce substantial evidence that the licensee or

license appliant is a suitable person to hold a license to carry a firearm. *Id*. at 546.   Finally, state

case law give Worcester and Gemme authority to argue, as they have done countless times in

other gun appeal cases, that the state district court can overturn a police chief's decision only

upon a finding that the Chief's actions were "arbitrary, capricious, or an abuse of discretion."

*Chief of Police of Shelburne v. Moyer*, supra at 546 (quoted in *Godfrey v. Chief of Police of*

*Wellesley*, supra at 46 and in *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 902

(2003). Indeed, "[T]he burden of making a showing is on the applicant." *Howard v. Chief of*

*Police of Wakefield*, *supra*, 902.

　　　Here invoking the abstention doctrine would extricate the defendants not only from

federal jurisdiction but from the damage, fee shifting, and injunctive relief that apply to a § 1983

action and that would not apply under the Massachusetts Firearms Regulatory Scheme if the

plaintiff were to prevail in state court during judicial review.[6]

　　　This Court has rejected an argument similar to the defendants' intimation that the state

and federal actions are parallel. *Eridania Martinez v.  Hongyi Cui, MD, PhD*, Civil Action no.

06-40029-FDS.  While they do not actually apply that label, they do argue that abstention is in

order because of the similarities and interdependency of claims in the two actions. In *Martinez*,

---

[6] Indeed, plaintiff's complaint states that he has compelling and necessitous reasons for seeking the
original jurisdiction of the federal court.  Up until recently, Massachusetts Courts have been not friendly
to any Second Amendment claims or to similar claims arising under the Massachusetts Declaration of
Rights.  At paragraph 57, plaintiff states that "M.G.L. c. 140 § 131 . . . does not provide for scrutiny of the
chief's conduct in regulating a constitutional right, nor does it mandate nullification of unreasonable or
unconstitutional action or a police chief in denying or restricting an LTC."  Plaintiff also pointed out in
fn.*1 to the complaint that "[W]hatever remedies available to the Plaintiff under State law are woefully
inadequate because the Massachusetts Supreme Judicial Court, recently held that the Second Amendment
does not apply to Massachusetts.  Commonwealth v. Runyan, 456 Mass. 230 (2010) (The Massachusetts
Court SJC ruled unanimously [despite knowledge of *Heller*, and the anticipated ruling by the U.S.
Supreme Court in *McDonald v. City of Chicago*], that the Second Amendment does not apply to the
States as a matter of substantive due process rights).  The Massachusetts SJC does not believe either that
the Massachusetts Declaration of Rights, Art. 17, which provides "[T]he people have a right to keep and
bear arms for the common defense . . ." was only intended to provide for the common defense and "does
not guarantee an individual the right to keep and bear arms." (quotations omitted).

plaintiff brought state malpractice claims in a state action and federal claims under Section 1983 in this Court.[7]

The Court in *Martinez* held that:

> The stay of a proceeding in favor of a parallel state action is permitted only under "extraordinary" or "exceptional" circumstances, as there is a "heavy presumption favoring the exercise of jurisdiction. *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003) (citing *Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir. 1999).* [I]n determining whether a stay is appropriate, the Court is required to balance multiple factors, including (1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, and (3) the order in which the forums obtained jurisdiction. Id. (citing *Burns v. Walter*, 931 F.2d 140, 146 (1st Cir. 1991). Here, each of those factors weigh against imposing a stay." *Id.* at page 2.  This Court in Martinez held that the federal forum "is not the slightest bit less convenient than the state forum. The two courts are located less than a mile from each other on the same street in Worcester, Massachusetts.  Second, while is of course preferable to prevent piecemeal litigation, staying the federal proceeding is not warranted "simply because related issues otherwise would be decided by different courts, or even because two courts would be deciding the same issues." *KPS & Assocs. Inc*. 318 F.3d at 10 (quoting *Villa Marina Yacht Sales, Inc.* 915 F.2d at 16).  Here, staying the federal proceeding would only postpone, not eliminate, piecemeal litigation, because a resolution of the issues in the state case would not eliminate the need to litigate the issues in the federal case.  As several courts have recognized, however, "[a] desire to postpone litigation . . . does not constitute the requisite exceptional circumstances to stay federal litigation." *Layne v. Fair*, 671 Supp. 98, 100 (D. Mass. 1987) (citing *American Mfrs. Mut. Ins. V. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519 (11th Cir. 1984)). Finally, the plaintiff initiated both the state and federal action on the same day, February 6, 2006.  Accordingly, this case does not present "extraordinary" or "exceptional" circumstances making a stay appropriate." *Id*. at page 3. [8]

---

[7] In that action the plaintiff could not sue the employer of the doctor in negligence because the 11th Amendment and the doctrine of sovereign immunity barred a federal action against the Commonwealth.

[8] The order in which the forums obtained jurisdiction is also insignificant and not outcome determinative on the issue of abstention.  Plaintiff filed his petition for judicial review few days before the expiration of the 90 day period mandated by statute to appeal the Chief's decision (on December 22, 2010), while the federal action was filed eight days later, or on December 31, 2010.  (Complaint at ¶ 113, Ex. 9). *See, e.g., Sabbag v. Cinnamon*, CA No. 5:10-cv-02735-JF(HRL) (N.D. Cal. 12-10-2010) ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Traverelers*, 914 F.2d at 1370 (quoting *Cone*, 460 U.S. at 26).  Here, a lot more work has occurred in the federal action than in the state action, where no work at all has occurred

Because there are no exceptional or extraordinary circumstances here to justify abstention, the motion should be denied.  In any event, under *Pullman* abstention, federal courts ordinarily stay the federal action rather than dismissing it. *Mangual v. Rotger-Sabat*, 317 F.3d. 45, 63 (1ˢᵗ Cir. 2003)(rejecting Pullman abstention in a First Amendment case involving the press and a criminal libel statute).  Moreover, as in *Mangual*, the plaintiff is entitled to a federal forum. *Id.* at 63.  In *Mangual* the Court noted that the defendants failed to meet the requirements of the two-prong test but that abstention was particularly problematic, as it is here in the Second Amendment context, "[w]here First Amendment rights are involved. (citation omitted.)  ([W]e have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment.)  Abstention in these circumstances would be unwarranted." *Id.* at 63. The same logic that applies to the First Amendment applies with equal force to the Second Amendment. Compare *Quilici v. Village of Morton Grove*, 695 F.2d 261 (7ᵗʰ Cir. 1982) (rejecting *Pullman* abstention in a case that involved the constitutionality of a municipal ordinance which prohibited the possession of handguns within village borders because abstention was not mandatory and the issue of gun control was an important one).  Although *Quilici* was decided many years before *Heller* and *McDonald*, the rejection of abstention is instructive.

The more interesting question, not raised by defendants is whether any other type of abstention doctrine applies to the facts of this case in light of the Second Amendment pronouncements by the Supreme Court in *Heller* and *McDonald*.  Because this issue is capable of repeating itself in a different motion, plaintiff addresses it here.

---

for the exception of the court filing. *Transouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11ᵗʰ Cir. 1998) (relying on Cone and holding that timing and progress of the concurrent actions weighed against abstention).

## *YOUNGER* ABSTENTION IS INAPPLICABLE TO THIS LAWSUIT

The *Younger* abstention doctrine discourages federal courts from interfering with state criminal prosecutions on grounds of comity and deference to the state process within the original police powers of the states.  Nevertheless, *Younger* did not alter the basic concept that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).  "[A]bstention rarely should be invoked, because the federal courts  have virtually unflagging obligation . . . to exercise the jurisdiction given them." *Ankerbrandt v. Richards*, 504 U.S. 689, 705 (1992) (citation and internal quotation marks omitted); *New Orleans Public Serv. Council of New Orleans*, 491 U.S. 350, 359 (1988); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984).

A mere jurisdictional overlap involving factual subject matter or legal issues between state and federal action does not activate the *Younger* doctrine.  *Green v. Tucson*, 255 F.3d 1086, 1098 (9th Cir. 2001) ("That some issues may be litigated in the federal court that are also pending in state courts in the parallel lawsuit does not implicate the *Younger* doctrine.").  Because any arguments that the Younger doctrine applies bears a heavy burden, the application of this doctrine should be rejected in this case.

Defendants fail to satisfy *Younger's* threshold test because the state action was brought by the plaintiff for judicial review and is not a coercive action initiated by the commonwealth or the City of Worcester.  The reasoning behind *Younger* abstention is that federal courts ought to be free to choose not to interfere with a State attempt to enforce its own law through affirmative enforcement procedures, be they criminal or civil. However, this principle of comity does not apply in situations where it is the federal plaintiff, rather than the government, that brought the

collateral state proceeding.  In such cases, the federal court does not interfere with the state

efforts to enforce its own laws and there are no grounds for abstention.

A number of courts across the country have rejected *Younger* abstention where a

federal plaintiff, rather than the state, initiated the state proceeding.  One court went as far as to

rule that the argument that *Younger* applies under these circumstances to be "frivolous . . ."

*Nader v. Keith*, 385 F.3d 729, 731-32 (7th Cir. 2004).  Another Court held that "*Younger*

abstention is appropriate only when there is an action in state court against the federal plaintiff

and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v.

County of Lake*, 491 F3d 662, 665 (7th Cir. 2007); Brown v. Day, 555 F.3d 882 (10th Cir.2009);

*Slayton v. White (In re Slayton),* 409 B.R. 897 906 (Bankr. N.D. Ill. 2009); *Martinez v. Martinez*,

201 U.S. Dist. LEXIS 28109 at *42-49 (D.N.M. March 30, 2010).

First Circuit precedent likewise forecloses this sort of *Younger* claim. '[I]n *Younger v.

Harris*, the Supreme Court held that the federal courts must defer to ongoing state criminal

proceedings." *Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 777 (1st Cir.

1990) (citation omitted). Since then, the First Circuit has recognized that "[t]he policies

underlying *Younger* are fully applicable to noncriminal judicial proceedings when important

state interests are involved." *Middlesex County Ethics Committee v. Garden Bar Ass'n.* 457 U.S.

423, 432, 102 S.Ct. 2515, 73 L.Ed. 2d 116 (1982) (emphasis added). Thus:

> [s]ince *Younger*, deference has been similarly required to ongoing,
> originally state-initiated civil or even administrative proceedings that
> satisfy three conditions:  (1) the proceedings are judicial (as opposed to
> legislative) in nature; (2) they implicate important state interests, and
> (3) they provide an adequate opportunity to raise federal constitutional
> challenges. (citations omitted).
>
> *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 518 (1st Cir. 2009).

For *Younger* to apply the "[p]roceedings must be coercive, and in most cases, state

initiated, in order to warrant abstention." *Kercado-Melendez v. Aponte-Roque,* 829 F.2d 255,

259-61 (1st Cir. 1987); see also *Brown ex rel. Brown v. Day*, 555 F3d 882, 884-85 (10th Cir.

2009) (holding that proceeding challenging state's agency's decision to terminate Medicaid

benefits was remedial and not coercive, and thus was not the type entitled to Younger deference;

*Majors v. Engelbrecht*, 149 F.3d 709, 712 (7th Cir. 1998) (explaining that "[f]or purposes of

*Younger* abstention, administrative proceedings are 'judicial in nature' when they are coercive –

i.e., state enforcement proceedings.") *Planned Parenthood League of Mass. v. Bellotti*, 868 F.2d

459, 467, (1st Cir. 1989) (explaining that because there was no "state-initiated proceeding,

criminal or civil to enjoin, " *Younger* did not apply).  As the *Guillemard-Ginorio* court

explained:  "a state's enforcement of its law or regulations in an administrative proceeding

constitutes a coercive action, exempt from' the Supreme Court's ruling in *Patsy v. Florida Board*

*of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), "and entitled to Younger

deference. *Brown*, 555 F.3d at 890. Other administrative proceedings fill the 'remedial' category

and remain subject to Patsy's holding that a federal § 1983 plaintiff need not exhaust state

administrative remedies." *Id*. 585 F.3d 508, 522 (1st Cir. 2009).[9]

*Guillemard-Ginorio* involved the owners of an insurance company who brought suit

against the Office of the Insurance Commissioner in Puerto Rico and others alleging that

defendants investigated and sanctioned them solely because of their political affiliation with one

party. The complaint included § 1983, the First and Fourteenth Amendments. *Id*. at 510.  The

defendants argued that the plaintiff had brought a subsequent administrative appeal before the

Office of the Commissioner of Insurance and ultimately to the Courts of the Commonwealth. But

---

[9] Fourth Circuit Circuit precedent also forecloses it.  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (requiring that there be a "formal enforcement action").

the First Circuit noted that "[t]hese post-hoc remedial proceedings initiated by the plaintiffs are not of the type to which deference under *Younger* applies." *Id.* at 522.

Here, and as the First Circuit has instructed in *Guillemard-Ginorio* and in *Kercado-Melendez v. Aponte-Roque,* 829 F.2d 255, 259-61 (1ˢᵗ Cir. 1987), the plaintiff's state action for judicial review was "[r]emedial rather than coercive" because the judicial review  "[c]ould be trigged only" on Pineiro's initiative if he wished to purse, as he did, the limited judicial remedies available to him within the framework of the Massachusetts Firearms Regulatory scheme under G.L. c. M.G.L. c. 140, § 131.  *Id.* at 522.  Here as in *Guillemard-Ginorio,* and as in *Patsy*, Pineiro is not required to exhaust his remedies "in order to bring a § 1983 action in federal court. *Id.*; *Patsy*, 457 U.S. at 514, 102 S.Ct. 2557 (holding that litigants need not exhaust a § 1983 suit in federal court).

Thus, as in *Guillemard-Ginorio* or as *in* in *Kercado-Melendez v. Aponte-Roque,* by the time proceedings of substance on the merits began in federal court, the only pending state proceeding is remedial in nature and initiated by the plaintiff.  "[A]bsent the required type of "ongoing state judicial proceedings," the first prong of the *Younger* analysis is not satisfied and because of it this Court should deny any arguments regarding this type of abstention as well as *Pullman* abstention.  *See, e.g.,Guillemard-Ginorio, at page 523.*

An identical motion to dismiss was recently brought by various defendants in a nearly identical case. *Woollard v. Terrence Sheridan*, et al., Civil Action No. 1:10-cv-02068-JFM (D. Md., December 29, 2010). **Exhibit 1.**  In *Woollard*, the plaintiff who had experienced a violent home invasion requested a permit to carry a concealed firearm in public places.  He brought suit against the Secretary and Superintendent of the Maryland's State Police claiming that one of the provisions of Maryland's handgun carry permit law violated the Second Amendment and

Fourteenth Amendment of the Federal Constitution.  In *Woollard* as here, the plaintiff sought

declaratory and injunctive relief. Defendants' filed a motion to dismiss on abstention grounds.

**Ex. 1**, at page 1. (Memorandum of Law, J. Frederick Motz, United States District Judge).

Defendants sought dismissal in the alternative, on the Equal Protection Claim as well.

The State of Maryland in *Woollard* similarly required as Worcester required in Pineiro's case,

that the Secretary must find that the applicant "[h]as good and substantial reason to wear, carry,

or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution

against apprehended danger." § 5-306(a)(5)(ii).  *Id.* at 2.  In *Woollard*, if the Secretary denied the

application, the applicant could request an informal review of the application by the Secretary of

or a formal review by the Handgun Permit Review Board of Maryland.  *Id.* at 2.  When *Woollard*

went to renew his application for personal protection after a previous home invasion, it was

denied because the Secretary of the State Police claimed Woollard had "failed to provide

sufficient evidence "to support apprehended fear."  *Id.* at 2.  *Woollard*, just like Pineiro, appealed

the decision to the Board, with the exception that in *Woollard*, the Board affirmed the denial

following a hearing finding that Woollard had "[f]ailed to "submit[ ] any documentation to verify

threats occurring beyond his residence, where he can legally carry a handgun",[and that] he did

not "demonstrate [] a good and substantial reason to wear, carry or transport a handgun as a

reasonable precaution against apprehended danger."  *Id*. at 3.  Woollard, opted not to seek state

judicial review of the Board's decision. *Id*. at 3.

Here Worcester and Gemme, required Pineiro to show "he has good reason to fear

injury to his person or property" Complaint at ¶ 117. With the exception of the added

requirement imposed by both defendants in this action that Pineiro meet an additional hurdle

before he could exercise his rights of self defense. i.e., that plaintiff meet the higher standard or

expectations imposed by Chief Gemme relative to what constitutes a "suitable person." (Complaint at ¶ 69). *Woollard*, like the plaintiff here, brought suit in U.S. District Court for the District of Maryland, "asserting that the requirement that a permit applicant demonstrate a "good and substantial reason to wear, carry or transport a handgun" violates the Second Amendment right to keep and bear arms and the Fourteenth Amendment right to equal protection." *Id*. at 3. [10]

The District Court Judge recently held after an extensive discussion on the coercive-remedial distinction as a factor in determining whether the *Younger* doctrine demands abstention where a state administrative proceeding is ongoing that the Board hearing in *Woollard* was "non-coercive." *Id*. at 9.  The Court held: "[W]oollard is challenging the state proceeding itself—that is, he alleges his constitutional rights were violated by the denial of his application for a handgun carry permit, not a distinct wrong. Nevertheless Woollard, rather than the state, initiated the administrative proceeding. His participation in the proceeding was not mandatory, and he would have faced no liability if he opted not to participate. Furthermore, the state is not seeking to punish Woollard for any bad act. Indeed, it was Woollard's compliance with the law—specifically, his choice to apply for a handgun carry permit rather than carrying the handgun illegally—that prompted the initiation of the state proceeding. The present care therefore lacks the "common thread" linking cases in which *Younger* abstention is appropriate. In sum, there is no ongoing state proceeding that warrants abstention under the Younger doctrine. Accordingly, I

---

[10] Pineiro has argued in his complaint that: he is eligible and legally qualified to possess firearms and other than the supposed inadequacy of his perceived "unsuitability" he can satisfy the legal requirement for the issuance of a LTC a CW. (Complaint at paragraph 103). He has also argued that "[N]either Worcester's firearm's policy nor Massachusetts State Law can restrict or condition Pineiro's right to exercise his Second Amendment rights to self defense  by placing the burden on him to demonstrate that he has good reason to fear injury to his person or property.  Complaint at paragaraph 104.  He has also argued that "[P]ineiro's is eligible to have an unrestricted LTC for self defense. (Complaint at 105) and finally that "[P]ineiro has met all the requirements that Massachusetts laws requires to have a LTC for personal protection. *Id*. at 105.

will deny the Defendant's Motion to Dismiss on this ground." *Id*. at 9.

Thus, just as in *Woollard*, and in order to determine whether *Younger* applies to this case, it was Pineiro that challenged the state proceeding and argued that his constitutional rights were to carry a handgun in public places for self defense.  Pineiro initiated the limited judicial proceeding in the district court of the Commonwealth pursuant to Chapter 140 § 131.  Pineiro's participation in the district court's of the Commonwealth was not mandatory, and he would not have faced liability had he opted not to bring the proceding.  *Woollard, supra,* at 9.  As in *Woollard*, it was Pineiro's effort to comply with the law – "[h]is choice to apply for a handgun carry permit rather than carrying a handgun illegally" – that prompted the initiation of the state proceeding." *Id.* at 9.   Just like in *Woollard*, the present case lacks the "common thread" linking cases in which *Younger* abstention is appropriate. *Id.* at 9.  In summary, because there is no ongoing state proceeding within the meaning of the *Younger* doctrine, the Court should reject any abstention argument under the *Younger* doctrine.[11]

**WHEREFORE,** Plaintiff prays that defendants' motion to dismiss or stay be denied.

Respectfully submitted,
Plaintiff

*/s/ Hector E. Pineiro*
Hector E. Pineiro, BBO # 555315
Law Office of Hector E. Pineiro
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

Dated: February 14, 2011

---

[11] In any event, the *Younger* doctrine does not apply to flagrant constitutional violations. *Younger* abstention does not apply in cases, such as this one, where the "challenged provision is flagrantly and patently violative of express constitutional provisions." *Moore v. Sims*, 442 U.S. at 423; *New Orleans*, 491 U.S. at 1367 (same) (quoting *Younger*, 401 U.S. at 53-54).

**CERTIFICATE OF SERVICE**

I, Hector E. Pineiro, Esq., hereby certify that the within document, filed February 14, 2011, via the Electronic Filing System of the Court, has been served on all registered participants, and there are no unregistered participants.

*/s/ Hector E. Pineiro*
Hector E. Pineiro